IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John V._____)<br>_____)<br>_____Plaintiff,_____)<br>_____)<br>_____v._____)<br>_____)<br>Frank Bisignano,_____)<br>Commissioner of Social Security,)<br>_____)<br>_____Defendant._____) | Case No.: 25-cv-50096<br><br>Magistrate Judge Margaret J. Schneider |

### MEMORANDUM OPINION AND ORDER

Plaintiff, John V., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [16] is denied and the Commissioner's motion for summary judgment [17] is granted.

### BACKGROUND

**A. Procedural History**

On January 4, 2022, John V. ("Plaintiff") filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for supplemental security income. R. 136. In both applications, Plaintiff alleged a disability beginning on November 18, 2016. *Id.* The Social Security Administration denied his applications initially on July 26, 2022, and upon reconsideration on January 20, 2023. *Id.* Plaintiff filed a written request for a hearing and on July 31, 2023, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared, testified, and was represented by counsel. *Id.* Stephen Rubin, Ph.D., an impartial medical expert, and James Radke, an impartial vocational expert ("VE"), also appeared and testified. *Id.*

**B. The ALJ's Decision**

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2016, the amended onset date. R. 139. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety; depression; attention deficit hyperactivity disorder ("ADHD"); posttraumatic stress disorder ("PTSD"); and asthma. *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work

activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 140.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: can tolerate occasional exposure to dust, gases, odors, fumes, and pulmonary irritants; understand, remember, and carry out simple, routine, and instructions; cannot meet fast-paced hourly production goals, such as on an assembly line; can tolerate occasional interaction with supervisors and coworkers; can tolerate brief interactions with the general public where contact is not on an ongoing basis; and can tolerate occasional changes to the work environment. R. 142. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 149. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including kitchen helper, cook helper, and collator operator. R. 150. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since January 4, 2016, the amended alleged onset date. R. 151.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it

different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [her] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to submit post-hearing medical evidence for review by medical experts; (2) formulating an RFC that did not account for Plaintiff's limitations in concentration, persistence, and pace ("CPP"); and (3) formulating an RFC that did not account for Plaintiff's ability to complete a work probationary period. The Court finds that the ALJ properly addressed post-hearing medical evidence and supported her RFC finding with substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

### **Post-Hearing Medical Evidence**

Plaintiff argues that the ALJ improperly played doctor by interpreting post-hearing medical evidence and further erred by finding impartial medical expert Dr. Rubin persuasive. After the hearing, consulting psychologist Dr. Gioia administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") test to Plaintiff and provided the results in a psychological report. R. 5999-6006. Plaintiff argues that the ALJ was not qualified to interpret the MMPI-2 results and that the test rendered Dr. Rubin's opinion unreliable.

The Court does not find that the ALJ played doctor by interpreting the MMPI-2 results. In discussing Dr. Gioia's psychological examination report, the ALJ noted that, as to the MMPI-2 examination, the report did not contain "any clear diagnostic impressions but rather state[d] that the psychological profile testing indicate[d] Axis I clinical syndromes of anxiety, dysthymia, and PTSD, while also noting that there 'appeared to be an elevation on the severe clinical syndromes scale, i.e., major depression scale.'" R. 144. Contrary to Plaintiff's contention, the ALJ here did not interpret but rather summarized what Dr. Gioa's report stated were the MMPI-2 results. This was not improper. *See Olsen v. Colvin*, 551 Fed. Appx. 868, 875 (7th Cir. 2014) (finding that an ALJ did not err in summarizing and reciting portions of MRIs). Importantly, Plaintiff has not provided Dr. Gioia or any other physician's opinion on the conclusion to be drawn from the MMPI-2. *Id.* ("[Claimant] never provided an opinion from a physician about the conclusion to be drawn from the various MRIs."); *Gloria S. v. Berryhill*, No. 18 C 50095, 2019 WL 2435858, at *4 (N.D. Ill. June 11, 2019) ("[Claimant] nor her counsel ever followed up with Dr. Asner to get *his* interpretation of the report."). While Plaintiff frames a mental impairment questionnaire completed by Dr. Gioia as a "concomitant report" containing his diagnostic impressions, the ALJ noted that the questionnaire appears to be largely based on Plaintiff's subjective statements. The questionnaire itself does not tie any of its conclusions to the MMPI-2 results, but rather states that it is based on an evaluation of Plaintiff from April 27, 2023 to Jul 25, 2023. R. 6082. Thus, it is unclear to the Court to what extent the questionnaire purports to interpret the MMPI-2 results. R. 148, 6082.

As to Plaintiff's claim that the MMPI-2 results rendered Dr. Rubin's opinion unreliable, the ALJ did not err in finding Dr. Rubin's opinion persuasive. "An ALJ may rely on a reviewing

3

physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'") (quoting *Moreno*, 882 F.3d at 728). Here, Plaintiff has not demonstrated how or why the MMPI-2 results would have "changed the picture so much that it reasonably could have changed" Dr. Rubin's opinion. *See Massaglia*, 805 F. App'x 406, 410 (citation modified). In support of his argument, Plaintiff cites Dr. Rubin's July 31, 2023, hearing testimony, where he opined that the MMPI-2 was "the most widely used personality inventory that's ever been utilized" and that it was a "highly reliable, highly valid, [and] well thought of test." R. 211. Given Dr. Rubin's high regard for the MMPI-2, Plaintiff argues that the ALJ should not have relied on his opinion because the MMPI-2 results were significant evidence that reasonably could have changed his mind. [16], p. 19. The Court finds this argument speculative. While Plaintiff cites Dr. Rubin's high regard for the MMPI-2, he has not presented evidence that the results from the test would have changed Dr. Rubin's opinion, which was based on an extensive review of a voluminous record that spanned over a decade. R. 148. As the Commissioner notes, "[w]hile Dr. Gioia's reports add more data, it is largely repetitive data on subjects that were already well covered." [17], p. 5. Therefore, the Court finds that the ALJ properly relied on Dr. Rubin's opinion and that it was not rendered stale by the MMPI-2 results.

### **Pace Limitations**

Plaintiff next argues that substantial evidence did not support the ALJ's production rate limitation because it was based on a misstatement of Dr. Rubin's testimony, which he argues supported greater limitations than the ALJ found. During the hearing, Dr. Rubin, the impartial medical expert, opined that Plaintiff had a moderate limitation in CPP and that he should be limited to non-paced, non-stressful work. R. 198. Dr. Rubin defined non-stressful work as "not working under a quota where he has to produce X number of whatever in a certain amount of time." R. 199. However, Dr. Rubin also noted that this work was "below [Plaintiff's] capabilities" because he could function at a much higher level. R. 199. Finding his opinion persuasive, the ALJ determined that Plaintiff is limited to simple, routine, repetitive tasks but cannot meet fast-paced hourly production goals, such as on an assembly line. In reciting Dr. Rubin's testimony, the ALJ stated that he opined that Plaintiff could "perform simple, routine, repetitive work where he is not working under a strict daily production quota." R. 148.

As an initial matter, the Court does not accept plaintiff's characterization that the limitations set forth by the ALJ are inconsistent with Dr. Rubin's opinion. As noted above, Dr. Rubin opined that Plaintiff should avoid stressful, quota-based work with the qualification that Plaintiff likely could operate at a higher level. R. 199. Limiting Plaintiff to simple, routine, repetitive tasks that do not have fast-paced hourly production goals is consistent with Dr. Rubin's opinion and adequately accounts for Plaintiff's moderate limitations in CPP. *See Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (finding that RFC limiting claimant to "no fast paced production quota" but permitting goal oriented daily quotas adequately accounted for moderate limitations in CPP); *Dawn M. v. O'Malley*, No. 22 CV 4424, 2024 WL 3580610, at *4 (N.D. Ill. July 16, 2024)

(finding that limiting claimant to "jobs with occasional or no variables and work that does not involve hourly production quotas" adequately addressed moderate limitations in CPP); *Candice P. v. Dudek*, 23 CV 00965, 2025 WL 859995, at *5 (N.D. Ill. Mar. 18, 2025) (finding that simple work without fast-paced production rates or hourly quotas adequately accounted for claimant's moderate limitations in CPP); *Erica A. v. Dudek*, 23 CV 16889, 2025 WL 885706, at *2 (N.D. Ill. Mar. 21, 2025) (finding no error where ALJ inaccurately stated the ME's opinion but formulated an RFC that was consistent with the opinion).

However, even if the ALJ had mischaracterized the ME's opinion, the Court would find the error harmless because the ALJ was not required to incorporate every limitation opined to. "In general, 'the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.'" *Whitehead v. Saul*, 841 Fed. Appx. 976, 982 (7th Cir. 2020) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). The ALJ was entitled to consider the entire record and assess Plaintiff's RFC based on substantial evidence in the record. *See Schmidt v. Astrue*, 496 F.3d at 845. Here, the ALJ's production limitation was not solely based on the Dr. Rubin's opinion, but also on the other evidence in the record such as Plaintiff's mostly normal mental status examinations, prior administrative medical findings assessing a moderate limitation in CPP, and gaps in mental health treatment. R. 141, 144, 247, 265, 2704, 2723, 6303-04. Importantly, aside from Dr. Rubin's testimony, Plaintiff does not point to evidence in the record that warrants a greater limitation. Accordingly, the Court finds no error.

### **Probationary Periods**

Plaintiff also contends that the ALJ erred by failing to consider probationary periods in her RFC finding. Specifically, Plaintiff argues that the RFC limitation of occasional contact with supervisors was incompatible with completing a work probationary period which would necessarily require more than occasional contact. Plaintiff's argument is waived. The VE testified that Plaintiff, given her age, education, work history, and RFC could perform the three representative occupations he identified. R. 216. The VE did not discuss the training requirements for those particular positions. While Plaintiff asked a few general questions regarding probationary periods, at no point did Plaintiff ask specific questions or raise objections related to the probationary periods associated with the identified job positions. R. 219-221. Nor did Plaintiff ask the VE how long and to what extent more than occasional contact would occur during a probationary period. While a claimant cannot waive the substantial evidence standard, "a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record." *Leisgang v. Kijakazi*, 72 F. 4th 216, 220 (7th Cir. 2023) (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023)). To avoid forfeiture, a claimant must make specific objections and do more than ask vague or general questions. *See Fetting v. Kijakazi*, 62 F.4th at 338 (holding that claimant "forfeit[ed] any challenge to the VE's testimony" by failing to timely object).

Even if the argument were not waived, Plaintiff presents no evidence on appeal that these three representative occupations require training that Plaintiff is unable to perform. Given the lack of testimony or questions pertaining to the training requirements associated with the three representative occupations, this Court cannot find that the ALJ erred in failing to consider any such requirements. *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[T]he VE's testimony was

5

both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony."); *Rosemary M. v. Colvin*, 21 CV 50446, 2025 WL 257178, at *3 (N.D. Ill. Jan. 21, 2025) (finding that claimant waived argument that she could not complete the training period for jobs identified by the VE).

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse and remand the Commissioner's decision [16] is denied and the Commissioner's motion for summary judgment [17] is granted.


Date: December 9, 2025                    ENTER:

                                          _____
                                          United States Magistrate Judge